**JENNER & BLOCK LLP**
Reid J. Schar (SBN 283948)
RSchar@jenner.com
525 Market Street, 29th Floor
San Francisco, CA 94105-2708
Telephone: +1 628 267 6800
Facsimile: +1 628 267 6859

Kate T. Spelman (SBN 269109)
kspelman@jenner.com
2029 Century Park East, Suite 1450
Los Angeles, CA 90067
Telephone: +1 213 239 5100
Facsimile: +1 213 239 5199

**JENNER & BLOCK LLP**
Andrew W. Vail*
avail@jenner.com
David C. Layden*
dlayden@jenner.com
Andrianna D. Kastanek*
akastanek@jenner.com
353 N. Clark St.
Chicago, IL 60654
Telephone: +1 312 222 9350
Facsimile: +1 312 527 0484

* *pro hac vice* application granted

Attorneys for Defendant
MOTOROLA SOLUTIONS, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

MICHELLE ROJAS and MARISSA BARRIGA, individually and on behalf of all other persons similarly situated,

Plaintiffs,

v.

MOTOROLA SOLUTIONS, INC.,

Defendant.

Case No. 4:26-cv-11419-HSG

The Honorable Haywood S. Gilliam, Jr.

**DEFENDANT MOTOROLA SOLUTIONS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

| | |
|---|---|
| Date: | January 14, 2027 |
| Time: | 2:00 p.m. |
| Courtroom: | 2, 4th Floor |
| Judge: | Hon. Haywood S. Gilliam, Jr. |

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on Thursday, January 14, 2027, at 2:00 p.m., or as soon thereafter as counsel may be heard, in Courtroom 2 on the 4th Floor of the United States Courthouse, 1301 Clay Street, Oakland, California, before the Honorable Haywood S. Gilliam, Jr., Defendant Motorola Solutions, Inc. ("Motorola") will and hereby does move to dismiss Plaintiffs' Complaint.

Motorola moves under Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the Complaint's sole count in its entirety and with prejudice. This motion is based on this Notice, the following Memorandum of Points and Authorities, the accompanying Declaration of Reid J. Schar and exhibits, the pleadings and papers on file, and any argument the Court may entertain.

Statement of the issues:

1. Whether Plaintiffs have statutory standing under Cal. Civ. Code § 1798.90.54(a) where they do not plausibly allege that anyone ever accessed automated license plate reader ("ALPR") data about their vehicles, or that they ever sought out or reviewed Motorola's usage-and-privacy policy.

2. Whether Plaintiffs plausibly allege a violation of California's ALPR statute where (a) the statute does not make a private ALPR operator secondarily liable when a public agency allegedly shares ALPR data in violation of Cal. Civ. Code § 1798.90.55(b), and (b) Motorola's usage-and-privacy policy is posted on its website and addresses each category that Cal. Civ. Code §§ 1798.90.51(b)(2) and 1798.90.53(b)(2) require.

3. Whether Plaintiffs plead that Motorola "knowingly caused the harm," Cal. Civ. Code § 1798.90.54(a), where their only allegation of knowledge is a conclusory recital of that element.

Dated: November 12, 2026 JENNER & BLOCK LLP

By: */s/ Reid J. Schar*

Attorney for Defendant

**TABLE OF CONTENTS**

Introduction ........ 1
Background ........ 2
Legal Standard ........ 3
Argument ........ 4
I. Plaintiffs Lack Statutory Standing. ........ 4
A. Plaintiffs' security allegations show no harm because no Plaintiff alleges that anyone accessed or otherwise interacted with data about their vehicle ........ 4
B. Plaintiffs' usage-and-privacy-policy allegations cannot support standing because no Plaintiff alleges seeking out or reviewing the Policy. ........ 7
II. Plaintiffs Fail To Allege That Motorola Violated California's ALPR Statute ........ 9
A. Plaintiffs do not plead a violation because the statute does not make private ALPR operators liable for their public-agency customers' sharing. ........ 9
B. Plaintiffs do not plead a violation because Motorola's Policy is readily available online and addresses every required subject. ........ 13
III. Plaintiffs Fail To Allege That Motorola "Knowingly" Caused Them Harm. ........ 14
Conclusion ........ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adolph v. Uber Techs., Inc.*,
14 Cal. 5th 1104 (2023) .......... 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... *passim*

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) .......... 6, 7

*Bartholomew v. Parking Concepts, Inc.*,
118 Cal. App. 5th 438 (2026) .......... *passim*

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 3, 7

*Boulton v. Community.com, Inc.*,
No. 23-3145, 2025 WL 314813 (9th Cir. Jan. 28, 2025) .......... 6

*Bryan v. United States*,
524 U.S. 184 (1998) .......... 14

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023) .......... 6

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
511 U.S. 164 (1994) .......... 9

*Chatham Fin. Corp. v. Milhaus, LLC*,
807 F. Supp. 3d 373 (D. Del. 2025) .......... 5

*Clarke v. Horany*,
212 Cal. App. 2d 307 (1963) .......... 10

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
589 U.S. 327 (2020) .......... 5

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 7

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) .......... 13

*DataTern, Inc. v. MicroStrategy, Inc.*,
No. 11-11970-FDS, 2017 WL 505969 (D. Mass. Feb. 7, 2017) .......... 5

*In re Deep Vein Thrombosis*,
356 F. Supp. 2d 1055 (N.D. Cal. 2005) .......... 11, 12

*Doe v. GTE Corp.*,
347 F.3d 655 (7th Cir. 2003) .......... 10

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... 5

*In re Equity Funding Corp. of Am. Sec. Litig.*,
416 F. Supp. 161 (C.D. Cal. 1976) .......... 10

*In re Firearm Cases*,
126 Cal. App. 4th 959 (2005) .......... 11

*Gordon v. Kolod Wager L. Offices, LLP*,
No. D044577, 2007 WL 840869 (Cal. Ct. App. Mar. 21, 2007) .......... 14

*Hutton v. McDaniel*,
264 F. Supp. 3d 996 (D. Ariz. 2017) .......... 15

*John v. Super. Ct.*,
63 Cal. 4th 91 (2016) .......... 12

*Kamen v. Lindly*,
94 Cal. App. 4th 197 (2001) .......... 9

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 13

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) .......... 13

*Little Seeds Children's Ctr., Inc. v. Citibank, N.A.*,
815 F. Supp. 3d 891 (N.D. Cal. 2025)....................6

*Maag v. U.S. Bank, Nat'l Ass'n*,
No. 21-cv-31-H-LL, 2021 WL 5605278 (S.D. Cal. Apr. 8, 2021)....................6

*Mata v. Digit. Recognition Network, Inc.*,
121 Cal. App. 5th 1075 (2026)....................*passim*

*Messano v. Experian Info. Sols., Inc.*,
251 F. Supp. 3d 1309 (N.D. Cal. 2017)....................15

*Meyer v. Holley*,
537 U.S. 280 (2003)....................11

*Modisette v. Apple Inc.*,
30 Cal. App. 5th 136 (2018)....................11

*Nat'l Pork Producers Council v. Ross*,
598 U.S. 356 (2023)....................12

*Navarro v. Ski Data, Inc.*,
No. 2:20-cv-7370, 2022 WL 18280359 (C.D. Cal. Dec. 7, 2022)....................4, 10, 12

*O'Neil v. Crane Co.*,
53 Cal. 4th 335 (2012)....................11

*Petroliam Nasional Berhad v. GoDaddy.com, Inc.*,
737 F.3d 546 (9th Cir. 2013)....................9

*Presbyterian Camp & Conf. Ctrs., Inc. v. Super. Ct.*,
12 Cal. 5th 493 (2021)....................11

*Soo Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017)....................7

*United States v. Metcalf*,
156 F.4th 871 (9th Cir. 2025)....................12

*Van Buren v. United States*,
593 U.S. 374 (2021)....................5, 10

**Statutes**

Cal. Civ. Code § 1798.29 ........ 8
Cal. Civ. Code § 1798.90.5 ........ 1, 2, 5
Cal. Civ. Code § 1798.90.51 ........ *passim*
Cal. Civ. Code § 1798.90.53 ........ *passim*
Cal. Civ. Code § 1798.90.54 ........ 4, 5, 14
Cal. Civ. Code § 1798.90.55 ........ 9, 11
Fed. R. Civ. P. 8 ........ 3
Fed. R. Civ. P. 12 ........ 3, 13

**Other Authorities**

Cal. Assemb. Comm. on Privacy & Consumer Protection, Analysis of S.B. 34 (Hill), 2015-2016 Reg. Sess. (July 7, 2015) ........ 11, 12
Cal. Sen. Comm. on Transp. & Hous., Analysis of S.B. 34 (Hill), 2015-2016 Reg. Sess. (Apr. 7, 2015) ........ 11

## INTRODUCTION

Plaintiffs sue Motorola Solutions, Inc. ("Motorola") for what Plaintiffs speculate Motorola's *law enforcement customers*—the Merced and UC Merced Police Departments—did with automated license plate reader ("ALPR") data about Plaintiffs' vehicles. Plaintiffs do not plead that any non-California agency ever viewed, retrieved, or otherwise engaged with ALPR data about their vehicles. They do not specify when, how, or how often ALPR data was supposedly shared. And they do not allege that Motorola itself unlawfully disclosed data about their vehicles. Nonetheless, Plaintiffs allege that Motorola sold ALPR systems that "permitted" the Merced and UC Merced Police Departments to share their ALPR databases with federal and out-of-state agencies, in violation of California's ALPR statute, Cal. Civ. Code § 1798.90.5 *et seq.* Plaintiffs also say "on information and belief," without pleading facts that would make that allegation plausible, that federal or out-of-state agencies accessed and used ALPR data about Plaintiffs' vehicles.

On Plaintiffs' theory, California's ALPR statute makes Motorola secondarily liable for how its customers use the ALPR cameras and software they lawfully purchase. That theory is wrong. The ALPR statute does not hold an ALPR technology vendor secondarily liable for its customers' use of their systems, and certainly not where Plaintiffs fail to adequately allege interaction with ALPR data about Plaintiffs' vehicles. The Court should dismiss Plaintiffs' single-count complaint for three independent reasons.

*First*, Plaintiffs fail to plead the harm needed for statutory standing. Standing under the ALPR statute requires actual harm—that is, an actual instance of unauthorized access, unauthorized use, or a security breach involving ALPR data about the plaintiff's own vehicle. Plaintiffs do not plausibly allege that anyone accessed ALPR data about *their* vehicles. At best, they allege that federal and out-of-state agencies had access to a database containing such data. But having authorized access to a *database* is not the same as accessing *specific data*; a law enforcement customer accesses particular ALPR data only if it queries or interacts with that data. Plaintiffs' unsupported "information and belief" allegation cannot fill that gap, Dkt. 1-1 ("Compl.") ¶ 76; rather, it confirms that Plaintiffs plead only a non-cognizable "subjective belief of harm." *Mata v. Digit. Recognition Network, Inc.*, 121 Cal. App. 5th 1075, 1098 (2026), *review denied* (Cal. Oct. 28, 2026). Plaintiffs' ancillary allegations of other violations fare no better on harm: Plaintiffs never allege viewing, looking for, or even caring about Motorola's ALPR policy.

*Second*, even if Plaintiffs had adequately pleaded harm, that harm is not traceable to an alleged violation by Motorola. The ALPR statute does not create a secondary liability regime; it allows liability only where the private entity permits "unauthorized" access—*e.g.*, data breaches. It does not impose liability on a private entity for public agencies' alleged violations of the provision written for them, including where the entity allegedly fails to constrain authorized end-users' conduct. What's more, the ALPR statute restricts sharing by public agencies alone. It does not restrict sharing by private entities. Plaintiffs thus seek to hold Motorola secondarily liable for something the statute lets Motorola do itself. Plaintiffs' usage-and-privacy-policy allegations again fare no better: the policy's language and Motorola's website show compliance with the statutory requirements.

*Third*, Plaintiffs fail to plead that Motorola caused them harm "knowingly." Their knowledge allegations consist of two conclusory sentences: Motorola "engaged in the unlawful conduct alleged herein knowingly" and "knowingly caused the harm." Compl. ¶ 81. Those "threadbare recitals" are not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nothing else in the Complaint supplies the missing facts: Plaintiffs allege that Motorola's security was lax and its policy too thin, but a defendant's alleged general failure to safeguard data does not establish that it knew of any plaintiff's particular harm.

Motorola is committed to data security and transparency. But Plaintiffs suffered no cognizable harm, and their concerns are not actionable. The Court should dismiss the Complaint with prejudice.

## **BACKGROUND**

Motorola Solutions, Inc. is a Delaware corporation headquartered in Chicago, Illinois. Compl. ¶ 16. Through a 2019 acquisition that included Vigilant Solutions, Motorola offers ALPR cameras and associated software to law enforcement and commercial customers. *Id.* ¶¶ 7–9, 14–15, 29, 31.

Plaintiffs are two Merced, California residents who sued on behalf of themselves and a putative nationwide class. *Id.* ¶¶ 14–15, 82. They allege that their vehicles were photographed by the cameras in question, near UC Merced's entrance. *Id.* ¶¶ 14–15, 69–72. They further allege that two of Motorola's customers—the UC Merced Police Department and the Merced Police Department, both "public agencies," *see* Cal. Civ. Code § 1798.90.5(f)—made ALPR data available to federal and out-of-state law enforcement agencies. *Id.* ¶¶ 12, 50, 53. Plaintiffs do not claim that anyone gained access to ALPR data about *their* vehicles from Motorola directly. Still, they allege that these agencies' sharing arrangements

show that Motorola failed to maintain "reasonable security procedures and practices" under California's ALPR statute. *Id.* ¶¶ 52, 54. As to ALPR data about their vehicles specifically, Plaintiffs allege "on information and belief based on the allegations contained herein" that it "was unlawfully accessed and used by, and otherwise shared with and transferred to, various federal and out-of-state agencies." *Id.* ¶ 76.

Plaintiffs separately challenge Motorola's usage-and-privacy policy. They admit that Motorola has implemented such a policy, available on Motorola's website. *Id.* ¶¶ 57–66; *see also* Declaration of Reid J. Schar in Support of Motorola's Motion to Dismiss ("Schar Decl."), Ex. A ("Policy"). Indeed, Plaintiffs quote that Policy and supply the URL where Motorola posts it. Compl. ¶¶ 57–66. They say that Motorola's Policy was not conspicuous enough and failed to give a sufficient description of authorized employees and of error-correction measures. *Id.* Yet no Plaintiff alleges reading the Policy, reviewing the other parts of Motorola's website pertaining to data privacy, searching for any supposedly omitted data-privacy-related information, asking Motorola about such information, or even wanting to know such information.

On harm, Plaintiffs plead "emotional distress" and an "imminent and impending injury" arising from federal or out-of-state agencies using ALPR data "in improper ways," based on "reports of the federal government arresting United States citizens for seemingly lawful behavior." *Id.* ¶¶ 79–80. They also assert an injury to their "right to privacy." *Id.* ¶ 80.

Plaintiffs seek certification of a putative class consisting of "[a]ll individuals in the United States whose license plate number or other identifying information was captured by Defendant using Defendant's California ALPR Cameras during the class period." *Id.* ¶ 82. That definition is not confined to the cameras near UC Merced's entrance; it reaches every camera the Complaint attributes to Motorola anywhere in California. *See id.* ¶ 8. Membership turns on a single event—a camera capturing a plate—not on unauthorized access of ALPR data or any other colorable statutory violation.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, and to comply with Rule 8, a complaint must plead "factual content" supporting a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court need not accept legal conclusions, formulaic recitals of elements, or unsupported inferences. *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## ARGUMENT

California's ALPR statute creates a narrow private right of action: "[a]n individual who has been harmed by a violation of this title . . . may bring a civil action in any court of competent jurisdiction against a person who knowingly caused the harm." Cal. Civ. Code § 1798.90.54(a). That sentence has three elements: (I) harm to the plaintiff, (II) a violation that caused the harm, and (III) the defendant's knowledge of the harm. Plaintiffs fail to adequately plead any of the three. Each failure independently requires dismissal.

### I. Plaintiffs Lack Statutory Standing.

Standing under California's ALPR statute requires "actual harm." *Mata*, 121 Cal. App. 5th at 1089–98; *see also* Cal. Civ. Code § 1798.90.54(a);[1] *Bartholomew v. Parking Concepts, Inc.*, 118 Cal. App. 5th 438, 447 (2026), *as modified on denial of reh'g* (Feb. 27, 2026), *review denied* (Cal. May 13, 2026) (rejecting the argument that "harm results from *any* violation of the ALPR Law"); *Navarro v. Ski Data, Inc.*, No. 2:20-cv-7370, 2022 WL 18280359, at *5–6 (C.D. Cal. Dec. 7, 2022). Plaintiffs fail to meet this requirement. Plaintiffs allege that Motorola violated the ALPR statute by failing to (A) maintain reasonable security procedures and practices, Compl. ¶¶ 46–55, and (B) "properly implement and post a usage and privacy policy," *id.* ¶¶ 56–66. Neither set of allegations suffices to show harm.

#### A. Plaintiffs' security allegations show no harm because no Plaintiff alleges that anyone accessed or otherwise interacted with data about their vehicle.

Under Sections 51(a) and 53(a), ALPR operators and end-users must "[m]aintain reasonable security procedures and practices . . . to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure." Cal. Civ. Code §§ 1798.90.51(a), 1798.90.53(a). Plaintiffs allege that Motorola violated these provisions. *See, e.g.*, Compl. ¶ 96.

The ALPR statute grants standing for a Section 51(a) or Section 53(a) violation only if the plaintiff ties it to an "actual occurrence of [unauthorized access] with [plaintiff's] own ALPR information." *Mata*, 121 Cal. App. 5th at 1089–98, 1089 n.11; *accord Navarro*, 2022 WL 18280359, at *5–6. As the California court explained in *Mata*, a database-level security vulnerability, like credential sharing, plus a "subjective

---

[1] Section 54's harm requirement defines who may sue under the statute as "a matter of statutory interpretation." *Mata*, 121 Cal. App. 5th at 1091 (quoting *Adolph v. Uber Techs., Inc.*, 14 Cal. 5th 1104, 1120 (2023)).

belief" that a privacy violation occurred, falls short of "cognizable harm for standing under the ALPR statute." *Mata*, 121 Cal. App. 5th at 1089 n.11, 1098. The alleged harm in *Mata*, as here, was database-level access. *See* Appellant's Opening Br., *Mata v. Digit. Recognition Network, Inc.*, No. D084781, 2025 WL 1431020, at *27–28 (Cal. Ct. App. May 5, 2025) (pointing to evidence of database access: a magazine writer who logged into an ALPR database using credentials belonging to someone else).[2] The California court held that access alleged was insufficient to confer standing. *Mata*, 121 Cal. App. 5th at 1089–98.

*Mata*'s holding tracks the ALPR statute's text. In describing the harm capable of conferring statutory standing, the term "access" modifies the term "ALPR information" (the data), not "ALPR system" (the database). Cal. Civ. Code § 1798.90.54(a) (distinguishing "unauthorized access or use of *ALPR information*" from "a breach of security of an *ALPR system*" (emphasis added)). That distinction is not incidental—courts routinely distinguish between access to a database and access to the data itself. *See, e.g.*, *Chatham Fin. Corp. v. Milhaus, LLC*, 807 F. Supp. 3d 373, 384–86 (D. Del. 2025); *DataTern, Inc. v. MicroStrategy, Inc.*, No. 11-11970-FDS, 2017 WL 505969, at *14–15 (D. Mass. Feb. 7, 2017). As used in the computing context, "access data" ordinarily involves some affirmative interaction with the data—*e.g.*, retrieving, transferring, or reading the data—not mere capacity to interact with the data. *Van Buren v. United States*, 593 U.S. 374, 387–88 (2021) (surveying definitions of access). Indeed, the mere-capacity reading of "access" would collapse the statute's separate definitions of "ALPR information" and "ALPR system." Cal. Civ. Code § 1798.90.5(b), (d). Because the ALPR statute draws that line, the standing provision's closest[3] exemplar harm—"unauthorized access or use of ALPR information"—is most

---

[2] It does not matter that *Mata* arose at summary judgment. *Mata*'s holding defines what harm is, and "the essential elements of a claim remain constant through the life of a lawsuit." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 332 (2020). At the pleading stage, Plaintiffs must allege facts that make that occurrence plausible. As discussed in this section, they have not.

[3] Section 54(a) lists a second exemplar harm—"a breach of security of an ALPR system"—but Plaintiffs have not pleaded that harm. Nor could they: A "breach of security" means an unauthorized external actor breaking through a firewall, stealing a password, planting malware, or otherwise exploiting a gap in security infrastructure; it does not include an authorized customer voluntarily sharing information with others—a customer with valid credentials is not the same as a hacker. *Van Buren*, 593 U.S. at 390 n.9. Courts applying California's data breach statutes have consistently held the same. *Cf. Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 847–48 (E.D. Cal. 2025) (transmitting data to Meta and Google was not a "breach of security" because that term "is concerned with how companies respond to intrusions into their computer systems, not how the companies themselves choose to use information"). Plaintiffs allege no such intrusion, nor that individualized data about their license plates was exposed through one.

naturally read to demand some actual interaction with the data.

*Mata*'s holding also is consistent with courts' treatment of analogous California privacy statutes: a plaintiff's allegation that a defendant maintained "lax security" cannot, for example, support a claim under the California Consumer Privacy Act ("CCPA") absent facts showing the plaintiff's own information was compromised. *Maag v. U.S. Bank, Nat'l Ass'n*, No. 21-cv-31-H-LL, 2021 WL 5605278, at *2 (S.D. Cal. Apr. 8, 2021); *see also Little Seeds Children's Ctr., Inc. v. Citibank, N.A.*, 815 F. Supp. 3d 891, 903–04 (N.D. Cal. 2025) (dismissing CCPA claim absent link between security deficiency and alleged unauthorized access).

Plaintiffs' allegations here suffer from the same deficiencies identified in *Mata*: Plaintiffs fail to adequately plead that their personal ALPR data was compromised. They gesture at a CISA advisory that describes device tampering, credential access, and replay attacks and at an "independent security researcher" who found that some camera feeds were viewable without authentication. Compl. ¶¶ 31–32, 47–48. But Plaintiffs never even try to tie those allegations to ALPR data about *their vehicles*. Beyond these vulnerabilities, Plaintiffs allege only that Motorola "permitted" the UC Merced and Merced Police Departments to share ALPR data with federal and out-of-state agencies. *Id.* ¶¶ 49–54. Plaintiffs try to tie this supposed violation to data about their vehicles with a single sentence: "on information and belief based on the allegations contained herein, their information was unlawfully accessed and used by, and otherwise shared with and transferred to, various federal and out-of-state agencies." *Id.* ¶ 76. But that allegation cannot bear the weight Plaintiffs place on it where they plead no facts showing that data about their vehicles was actually shared.

Courts routinely decline to credit conclusory "information and belief" allegations that someone unlawfully accessed electronically stored data. *See, e.g.*, *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1067–68 (C.D. Cal. 2023) (disregarding as "mere conclusion" the allegation that a third-party vendor, identified only "on information and belief," harvested data from website chats); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024) (holding that "vague assertion" that plaintiffs' medical information was "used by unauthorized third parties" did not plead that anyone "improperly viewed or otherwise accessed" it); *Boulton v. Community.com, Inc.*, No. 23-3145, 2025 WL 314813, at *1 (9th Cir. Jan. 28, 2025) (affirming dismissal because plaintiff's "repeated assertions" that defendant "intercepted"

her text message were "simply conclusory"). Granted, the Ninth Circuit allows information-and-belief pleading for facts that are peculiarly within the defendant's possession and control. *Soo Park v. Thompson*, 851 F.3d 910, 928–29 (9th Cir. 2017). But the facts in question here are not. They are within the possession and control of third parties: Motorola's customers. What's more, alleged asymmetric access to information does not lower the pleading bar. Allegations made on information and belief must still rest on some factual foundation that lifts the claim from conceivable to plausible, *Twombly*, 550 U.S. at 555 n.3, 570; *Iqbal*, 556 U.S. at 678, and Plaintiffs supply none.

Paragraph 76 is a quintessential conclusory allegation. Plaintiffs never provide the factual underpinnings of the alleged actual occurrence of any interaction with their own data: they do not plead any facts that would permit the Court to plausibly infer that an out-of-state or federal law enforcement agency ever searched for ALPR data about Plaintiffs' vehicles; alleging that it *could* have happened is insufficient under the *Twombly* standard. *See B.K.*, 721 F. Supp. 3d at 1064 (dismissing where plaintiffs did not allege "what medical information was allegedly disclosed or when it was disclosed"); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023) (rejecting disclosure allegations as "conclusory and devoid of any factual support" where plaintiffs did "not explain what information they provided"). To be sure, Plaintiffs allege elsewhere in the Complaint that the UC Merced and Merced Police Departments passively shared their ALPR databases with federal and out-of-state agencies—meaning that they made those databases available for searching. Compl. ¶¶ 50–54. But, again, database-level access alone does not plausibly support the inference alleged in Paragraph 76 that federal or out-of-state agencies actually interacted with data about Plaintiffs' vehicles. *See Mata*, 121 Cal. App. 5th at 1089 n.11. Thus, Plaintiffs have not adequately alleged an actual occurrence of unauthorized conduct relating to Plaintiffs—as required for statutory standing.

**B. Plaintiffs' usage-and-privacy-policy allegations cannot support standing because no Plaintiff alleges seeking out or reviewing the Policy.**

Under Sections 51(b) and 53(b), ALPR operators and end-users must implement an ALPR usage-and-privacy policy, make it "available to the public in writing," and post it on their website "conspicuously." Cal. Civ. Code §§ 1798.90.51(b)(1), 1798.90.53(b)(1). The policy must address seven listed subjects, including who may use the system and how the operator ensures the data's accuracy. *Id.*

§§ 1798.90.51(b)(2), 1798.90.53(b)(2).

A "mere statutory violation" is not harm. *Mata*, 121 Cal. App. 5th at 1092. Yet that is all Plaintiffs' usage-and-privacy-policy allegations assert. They claim no harm from anything having to do with the alleged deficiencies in Motorola's ALPR Policy. Compl. ¶¶ 79–80. They never allege seeking out any information allegedly missing from Motorola's Policy. They do not allege reviewing, searching for, or even caring about Motorola's ALPR Policy. The same omission was fatal in *Mata*, where the plaintiff "concede[d] he has never gone to DRN's website to look for, let alone review, DRN's usage and privacy policy," and read it only when his lawyers handed it to him in litigation. 121 Cal. App. 5th at 1100. Put simply, one cannot be harmed by never learning information one never sought.

Even if Plaintiffs had sought the information in question, the ALPR statute does not confer a "right to know"—at least not one that creates standing. *See id.* at 1099 & n.17 (expressing skepticism that the ALPR statute creates a "'right to know' harm"). Sections 51(b) and 53(b) require only that an operator or end-user make its policy "available to the public in writing." Cal. Civ. Code §§ 1798.90.51(b)(1), 1798.90.53(b)(1). Neither requires operators or end-users to seek out alleged data subjects and inform them of the policy's contents—they require only that the policy be posted. That distinguishes the ALPR statute from provisions in the same part of the Civil Code that require actual notice. *See, e.g.*, *id.* § 1798.29. At most, then, a Section 51(b) or 53(b) violation deprives a plaintiff of information she had a right to learn upon inquiry, not information she had a right to be told. That falls well short of the "actual, not abstract, harm"—like unauthorized access or a security breach—needed for standing, especially here where Plaintiffs simply never inquired. *Mata*, 121 Cal. App. 5th at 1094.

And even if Plaintiffs had a right to know, an incomplete policy does not harm that right. The California court in *Bartholomew* found harm on far different facts: the operator there had no ALPR policy. *Bartholomew*, 118 Cal. App. 5th at 445, 449. *Bartholomew* also limited its holding to those facts, expressly declining to decide "whether collecting and maintaining ALPR information with a usage and privacy policy that does not include every component identified in [Section 51(b)(2)] would also cause . . . harm." *Id*. at 449 & n.10; *see also Mata,* 121 Cal. App. 5th at 1092, 1098–99 (cabining *Bartholomew*). Motorola, by contrast, has a policy; it covers every Section 51(b)(2) category; and anyone can access it.

* * *

In sum, Plaintiffs' security theory alleges that data about their vehicles was merely accessible, not that anyone accessed it. Their policy theory alleges gaps in a policy they never sought. Neither suffices to state the actual harm Section 54 requires. Plaintiffs lack statutory standing, which requires dismissal.

## II. Plaintiffs Fail To Allege That Motorola Violated California's ALPR Statute.

Plaintiffs' claim fails for a second, independent reason: they fail to state that Motorola violated the ALPR statute. Even if the Court were to accept that Plaintiffs suffered harm, the two theories of a statutory violation they plead—that Motorola failed to safeguard ALPR information and that Motorola's ALPR Policy is deficient—fail on the face of the Complaint.

### A. Plaintiffs do not plead a violation because the statute does not make private ALPR operators liable for their public-agency customers' sharing.

Plaintiffs' failure-to-safeguard theory rests on secondary liability: they posit that an ALPR operator violates Sections 51(a) or 53(a) when a public-agency customer violates Section 55. That theory is wrong. The ALPR statute's text, structure, and legislative history, the common-law backdrop against which it was enacted, and the absurdity canon all foreclose it.

***Statutory text.*** Under Section 55, "[n]otwithstanding any other law or regulation," public agencies "shall not sell, share, or transfer ALPR information, except to another public agency, and only as otherwise permitted by law," though "the provision of data hosting or towing services shall not be considered the sale, sharing, or transferring of ALPR information." Cal. Civ. Code § 1798.90.55. Section 55 is the only provision of the statute that restricts sharing; private operators and end-users have no comparable limitation. This type of statutory silence on secondary liability generally means there is none. *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 737 F.3d 546, 550–51 (9th Cir. 2013); *accord Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177–78 (1994) ("We cannot amend the statute to create liability for acts that are not themselves [prohibited]" by statute); *Kamen v. Lindly*, 94 Cal. App. 4th 197, 204 (2001) ("[T]he [California] Legislature knows how to establish secondary liability when it wants to do so"). Sections 51(a), 53(a), and 55 are all silent on secondary liability; not one of them says that ALPR operators or end-users fail to reasonably protect ALPR information when a public-agency customer sells, shares, or transfers ALPR information that the operator collected.

The statutory term "unauthorized" confirms the point. Sections 51(a) and 53(a) require operators

and end-users to protect ALPR data from "*unauthorized* access, destruction, use, modification, or disclosure." Cal. Civ. Code §§ 1798.90.51(a), 1798.90.53(a) (emphasis added). That is, the statute requires operators and end-users to protect against "unauthorized" conduct only. The ALPR statute does not define "unauthorized," but in computing contexts, "authorization" refers to the "process by which users, having completed an . . . authentication stage, gain or are denied access to particular resources based on their entitlement." *Van Buren*, 593 U.S. at 390 n.9. In *Van Buren*, the U.S. Supreme Court held that an officer authorized to access a database for certain purposes did not "exceed authorized access" by accessing it for other purposes. *Id.* at 378–84, 395–96. Applying that logic here, a California officer authorized to access ALPR data and disclose it to California agencies likewise does not commit "unauthorized" access or disclosure by disclosing it to a federal or out-of-state agency—and an operator does not fail to protect data from "unauthorized" access or disclosure by not preventing that disclosure. In short, Sections 51(a) and 53(a) target hackers, not customers. *See Navarro*, 2022 WL 18280359, at *7.

***Statutory structure***. The inference against secondary liability is especially strong where, as here, a statute assigns liability to specific entities for specific conduct in one provision and to different entities for different conduct in another. *See, e.g.*, *In re Equity Funding Corp. of Am. Sec. Litig.*, 416 F. Supp. 161, 181 (C.D. Cal. 1976) ("[W]here a statute specifically limits those who may be held liable for the conduct described by the statute, the courts cannot extend liability . . . to those who do not fall within the categories of potential defendants described by the statute."); *Clarke v. Horany*, 212 Cal. App. 2d 307, 310–12 (1963) (rejecting aiding-and-abetting theory where statute made only person who received payment liable). Courts have applied that same principle to reject holding a company secondarily liable under a statute for customers' misconduct. *See Doe v. GTE Corp.*, 347 F.3d 655, 658–59 (7th Cir. 2003) (service provider not secondarily liable under Electronic Communications Privacy Act).

The ALPR statute precisely distinguishes between entities and what each must do to commit a violation: Sections 51 and 52 govern "operators." Section 53 governs "end-users." And Section 55 governs "public agencies." This entity-by-entity delineated structure shows that the California legislature intended liability to be siloed for each type of entity. Plaintiffs' secondary-liability theory would nullify the Legislature's choice to confine Section 55 to public agencies.

***Legislative history.*** The Legislature considered, and declined, the restriction Plaintiffs ask the

Court to read into the statute. A 2011 bill would have restricted private entities' retention, use, and sale of license-plate data, and their transfer of it to law enforcement; it failed on the Senate floor. Cal. Sen. Comm. on Transp. & Hous., *Analysis of S.B. 34*, 2015–2016 Reg. Sess., at 6–7 (Apr. 7, 2015) (describing S.B. 1330). A 2014 bill restricting both public- and private-sector users failed too. Cal. Assemb. Comm. on Priv. & Consumer Prot., *Analysis of S.B. 34*, 2015–2016 Reg. Sess., at 13 (July 7, 2015) (describing S.B. 893 (2014)). When the Legislature enacted S.B. 34 the next year, it barred the sale, sharing, and transfer of ALPR data by public agencies alone. Cal. Civ. Code § 1798.90.55(b). Plaintiffs ask this Court to supply by statutory construction what the Legislature expressly left out.

***Background common-law principles.*** Plaintiffs' reading of the ALPR statute also defies the California common-law backdrop against which the Legislature wrote the statute. When a legislature creates a private right of action for damages, courts presume it abides ordinary common-law tort principles, including those governing secondary liability. *Meyer v. Holley*, 537 U.S. 280, 285 (2003); *accord Presbyterian Camp & Conf. Ctrs., Inc. v. Super. Ct.*, 12 Cal. 5th 493, 503 (2021) ("A statute will be construed in light of common law decisions, unless its language clearly and unequivocally discloses an intention to depart from, alter, or abrogate the common-law rule[.]").

Under California common-law tort principles, manufacturers generally owe no duty to prevent purchasers from using their product in unlawful ways—even when such uses are foreseeable. *See, e.g.*, *O'Neil v. Crane Co.*, 53 Cal. 4th 335, 363–66 (2012) (no duty to prevent customers from connecting their product to asbestos-laden products); *In re Deep Vein Thrombosis*, 356 F. Supp. 2d 1055, 1065–66 (N.D. Cal. 2005) (no duty to prevent airlines from installing unsafe seat arrangements); *In re Firearm Cases*, 126 Cal. App. 4th 959, 973 n.12 (2005) (no duty to prevent retailers from selling handguns to criminals).

*Modisette v. Apple Inc.* is illustrative. There, a driver using FaceTime on his iPhone crashed into another car. 30 Cal. App. 5th 136, 140 (2018). The family in the other car sued Apple, claiming that California law required it to design the iPhone to prohibit distracting features while driving and that Apple, in fact, foresaw this risk yet sold the iPhone without that design. *Id.* at 140–41. The court rejected the claim, holding that Apple owed no duty to prevent customers from using iPhones while driving. *Id.* at 142, 152. So too here. That a customer *could* use Motorola's ALPR system contrary to law—though Plaintiffs do not plausibly allege that one did with data about their vehicles—does not make Motorola liable.

***Absurd results***. California law also does not tolerate statutory interpretations that lead to "absurd results." *John v. Super. Ct.*, 63 Cal. 4th 91, 96 (2016) ("We construe the statute's words in context, and harmonize statutory provisions to avoid absurd results"). Plaintiffs' theory would produce exactly that. Neither Section 51 nor 53 restricts with whom private entities may share ALPR information. *Navarro*, 2022 WL 18280359, at *7; *see also Mata*, 121 Cal. App. 5th at 1084 ("[T]he ALPR statute does *not* restrict or place limitations on a *private* entity's collection or use of ALPR information.") (emphasis in original); *Bartholomew*, 118 Cal. App. 5th at 449 (similar). Private entities thus may lawfully sell, share, and transfer ALPR data to federal and out-of-state agencies without violating the ALPR statute.[4] In fact, the California legislature expected as much. Cal. Assemb. Comm. on Priv. & Consumer Prot., *Analysis of S.B. 34*, 2015–2016 Reg. Sess., at 9–10 (July 7, 2015) (describing how ALPR systems might be used "by other state or federal government agencies" to compile hot lists). Holding private entities secondarily liable for conduct they may lawfully undertake themselves would be absurd.

Plaintiffs' theory also proves too much: every product manufacturer would need to answer for all customer misuse. Automakers, for example, would be liable for drunk-driving crashes because they did not install breathalyzer ignitions, or for crashes caused by excessive speed because a car can be driven over the speed limit. Foreseeability and preventability do not make manufacturers into "their purchasers' keeper." *In re Deep Vein Thrombosis*, 356 F. Supp. 2d at 1066. California law does not impose a "duty continuously to look over the purchaser's shoulder to ensure he or she is not harming someone with the manufacturer's product." *Id.* And the ALPR statute here places responsibility for sharing decisions on public agencies, not Motorola.

---

[4] A contrary reading would also raise constitutional concerns; the statute would impermissibly burden interstate commerce. *See Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023) (a state may not adopt "regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors"). Courts avoid constructions that raise such questions. *United States v. Metcalf*, 156 F.4th 871, 881–82 (9th Cir. 2025). The avoidance canon is unneeded here, but it confirms the reading the other tools of statutory interpretation already compel.

### B. Plaintiffs do not plead a violation because Motorola's Policy is readily available online and addresses every required subject.

Plaintiffs allege that Motorola's usage-and-privacy policy is deficient in two respects: it is too hard to find on Motorola's website, Compl. ¶¶ 62–66, and it lacks certain required information, *id*. ¶¶ 57–61. Judicially noticeable facts show otherwise: Motorola fully complies with Section 51(b).[5]

***Conspicuous Posting.*** Neither the ALPR statute nor California courts have defined how conspicuous a usage-and-privacy policy need be. But far from being "buried" at a "byzantine URL," Compl. ¶ 66, Motorola's Policy is available at the page for each of its LPR products under the heading "Resources," *see* Schar Decl. ¶¶ 3–5 & Exs. B–D. Also despite Plaintiffs' allegations about the website's search function, Compl. ¶ 65, the Policy appears at or near the top of the results when a user enters natural terms such as <license plate privacy>, <lpr>, or <privacy policy>, *see* Schar Decl. ¶¶ 6–8 & Exs. E–G. Plaintiffs' allegations to the contrary do not state a violation of Sections 51(b)(1) or 53(b)(1).

***Informational Requirements.*** Plaintiffs accuse Motorola of violating Sections 51(b)(2) and 53(b)(2) subparts (B) and (F), but their theory of liability rests on overreading what those provisions require. Motorola's Policy straightforwardly complies with the statute.

To begin, the statute "does *not* impose specific substantive requirements" on an operator's collection or use of data; it leaves operators "wide leeway to determine what to do with this data." *Bartholomew*, 118 Cal. App. 5th at 449 & n.9; *Mata*, 121 Cal. App. 5th at 1084–85.

Subpart (B) requires "[a] description of the job title or other designation of the employees and independent contractors who are authorized to use or access the ALPR system," along with their training requirements. Cal. Civ. Code § 1798.90.51(b)(2)(B). Plaintiffs do not dispute that Motorola's Policy identifies the required training. Plaintiffs' real objection is that the Policy designates "[a]ll employees of

---

[5] Rule 12(b)(6) permits the Court to make this finding. Because Plaintiffs refer to Motorola's Policy and website in their Complaint, the Court may consider Motorola's website and Policy under the incorporation-by-reference doctrine. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (explaining that incorporation by reference "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims"); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (holding that the doctrine "applies with equal force to internet pages as it does to printed material"). Where Motorola's website and Policy contradict Plaintiffs' allegations, the Court need not credit them, notwithstanding the usual Rule 12(b)(6) standard. *See, e.g.*, *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Inspecting the Policy and the website where it is posted reveals that the Policy can be found easily and contains all required information.

the company" and "[a]ll independent contractors of the company," rather than listing job titles. Compl. ¶¶ 57–58. But the statute calls for a "job title or other designation," and "all employees" is a designation. The Policy also states what those employees are authorized to do: "demonstrate the system to customers, or potential customers, provide customer support, conduct quality assurance testing, or collect data for purposes authorized by this policy." Policy at 2. Subpart (B) requires nothing more.

Motorola's Policy likewise satisfies subpart (F). That provision requires an operator's policy to include "[a] description of the reasonable measures that will be used to ensure the accuracy of ALPR information and correct data errors." Cal. Civ. Code § 1798.90.51(b)(2)(F). Motorola's Policy highlights the potential source of data inaccuracy: "[a]lthough very infrequent, the license plate translation [from photo to text] is sometimes inaccurate or incomplete." Policy at 2. Then, in the next sentence, the Policy describes a measure that users should take to avoid such errors: "confirm the computer translation" of the plate numbers against the license-plate images "before taking any action as a result of LPR data." *Id.* Again, Section 51(b)(2)(F) demands nothing more.

* * *

In the end, Plaintiffs fail to plead a violation of the ALPR statute. The statute does not make Motorola a guarantor of its customers' ALPR data practices. Nor does it require any detail beyond what Motorola includes in its ALPR Policy, readily available on its website. Plaintiffs' failure to plead a violation warrants dismissal.

## III. Plaintiffs Fail To Allege That Motorola "Knowingly" Caused Them Harm.

The ALPR statute's private cause of action permits suit only "against a person who *knowingly* caused *the harm*"—not just the violation. Cal. Civ. Code § 1798.90.54(a) (emphasis added); *see also Bartholomew*, 118 Cal. App. 5th at 447–48. The term "knowing" generally requires "knowledge of the existence of the facts in question." *Gordon v. Kolod Wager L. Offices, LLP*, No. D044577, 2007 WL 840869, at *11 n.18 (Cal. Ct. App. Mar. 21, 2007); *accord Bryan v. United States*, 524 U.S. 184, 192–99 (1998) ("[T]he term 'knowingly' . . . requires proof of knowledge of the facts that constitute the offense"). Thus, to state a claim under the ALPR statute, a plaintiff must allege that the ALPR operator was subjectively aware of the harm (*e.g.*, aware of the actual instance of unauthorized conduct with ALPR data about the plaintiff's vehicle).

Even if the Court credited Plaintiffs' information-and-belief pleading that ALPR information about their vehicles was actually accessed by a non-California agency and attributed that access to a statutory violation by Motorola, Plaintiffs fail to adequately plead that Motorola subjectively knew about that instance of access. Plaintiffs' only knowledge allegation states: "Defendant engaged in the unlawful conduct alleged herein knowingly, willfully and in reckless disregard of the law" and "Defendant knowingly caused the harm to Plaintiffs and Class members, as alleged herein." Compl. ¶ 81. Those sentences are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. This Court properly rejects such allegations. *See, e.g.*, *Messano v. Experian Info. Sols., Inc.*, 251 F. Supp. 3d 1309, 1326 (N.D. Cal. 2017) (Gilliam, J.).

Nothing else in the Complaint supports an inference of knowledge. Plaintiffs never allege that Motorola itself disclosed data about their vehicles; they allege only that Motorola's ALPR system has security vulnerabilities and that its ALPR policy is insufficiently detailed and too hard to find. The closest they come is the allegation that Motorola prepared an "Agency Data Sharing Report" listing the agencies with which the UC Merced Police Department shared data. Compl. ¶ 51. But a report that a customer shared data with other agencies says nothing about whether any agency retrieved data about Plaintiffs' vehicles—let alone that Motorola knew it had. And allegations that a defendant maintained deficient policies, practices, and procedures fall short of establishing knowledge of the particular plaintiff's particular harm. *See, e.g.*, *Hutton v. McDaniel*, 264 F. Supp. 3d 996, 1011, 1015 (D. Ariz. 2017) (rejecting the argument that a board "knowingly caused the company to violate" regulations absent "particularized allegations" connecting oversight deficiencies to specific knowing misconduct).

In sum, Plaintiffs plead neither knowledge nor facts from which knowledge could be inferred. Section 54's knowledge element is unmet.

## CONCLUSION

For the foregoing reasons, Motorola respectfully requests that the Court dismiss the Complaint with prejudice.

Dated: November 12, 2026

JENNER & BLOCK LLP

By: */s/ Reid J. Schar*

Attorney for Defendant