Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Theodore W. Maya (SBN 223242)
tmaya@ahdootwolfson.com
AHDOOT & WOLFSON, PC
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

Bradley K. King (SBN 274399)
bking@ahdootwolfson.com
AHDOOT & WOLFSON, PC
521 Fifth Avenue, 17th Floor
New York, NY 10175
Telephone: (917) 336-0171

Scott R. Drury (SBN 355002)
scott@drurylegal.com
DRURY LEGAL, LLC
6 Carriage Lane
Highwood, IL 60040
Telephone: (312) 358-8225

Joshua D. Arisohn (pro hac vice forthcoming)
josh@arisohnllc.com
ARISOHN LLC
94 Blakeslee Road
Litchfield, CT 06759
Telephone: (917) 656-0569

Counsel for Plaintiffs and the Proposed Class

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| MICHELLE ROJAS and MARISSA BARRIGA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MOTOROLA SOLUTIONS, INC.,<br><br>Defendant. | Case No. 4:26-cv-11419-HSG<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date: January 14, 2027<br>Time: 2:00 p.m.<br>Courtroom: 2, 4th Floor<br>Judge: Hon. Haywood S. Gilliam, Jr. |

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. STATEMENT OF ISSUES TO BE DECIDED ..... 2

III. STATEMENT OF FACTS ..... 2

- A. The ALPR Statute ..... 2
- B. Motorola's ALPR System and Policy ..... 4
- C. The Reported Sharing and Other Security Failures ..... 4
- D. The Policy's Posting and Content ..... 5
- E. Plaintiffs ..... 6

IV. ARGUMENT ..... 6

- A. Legal Standards ..... 6
- B. Plaintiffs' Complaint Does Not Incorporate Exhibits B-G to Motorola's Motion to Dismiss by Reference ..... 6
- C. Plaintiffs Plausibly Allege They Were "Harmed by a Violation" ..... 7
  - 1. Unauthorized Disclosure of a Person's ALPR Information Is Harm ..... 7
  - 2. Plaintiffs Plausibly Allege That Their Records Were Among Those Disclosed ..... 9
  - 3. In the Alternative, the Pleaded Facts Support an Inference of Retrieval ..... 12
  - 4. The Inconspicuous, Incomplete Policy Provides an Additional Basis for Harm ..... 13
- D. Plaintiffs Plausibly Allege That Motorola Violated the Statute ..... 15
  - 1. Plaintiffs' Complaint Rests on Motorola's Own Operator Duties ..... 15
  - 2. A Disclosure Forbidden by California Law Is "Unauthorized" ..... 16
  - 3. Motorola Had Ultimate Control Over the Sharing and Disclosure of ALPR Information ..... 17
  - 4. Motorola's Remaining Arguments Do Not Warrant Dismissal ..... 18
  - 5. Plaintiffs Plausibly Allege That the Policy Violates Section 51(b) ..... 19

E. Plaintiffs Plausibly Allege That Motorola "Knowingly Caused the Harm" .......... 19

1. Knowledge of Disclosing a Defined Set of Records Encompasses the Records in That Set .......... 19

2. The Complaint Pleads Knowledge at the Time of Disclosure .......... 21

F. Any Dismissal Should Be with Leave to Amend .......... 22

V. CONCLUSION .......... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU Found. of S. Cal. v. Superior Ct.*, 3 Cal. 5th 1032 (2017) ....1

*Archer v. NBCUniversal Media, LLC*, 794 F. Supp. 3d 716 (C.D. Cal. 2025)....20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....6, 21

*B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056 (C.D. Cal. 2024) ....12

*Bartholomew v. Parking Concepts, Inc.*, 118 Cal. App. 5th 438 (2026) .... passim

*Boulton v. Community.com, Inc.*, No. 23-3145, 2025 WL 314813 (9th Cir. Jan. 28, 2025) ....12

*Broam v. Bogan*, 320 F.3d 1023 (9th Cir. 2003) ....22

*Bryan v. United States*, 524 U.S. 184 (1998)....20

*Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051 (C.D. Cal. 2023) ....12

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994)....15

*Chatham Fin. Corp. v. Milhaus, LLC*, 807 F. Supp. 3d 373 (D. Del. 2025) ....10

*Cole v. LinkedIn Corp.*, 807 F. Supp. 3d 959 (N.D. Cal. 2025) ....20

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327 (2020) ....11

*Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023) ....12

*DataTern, Inc. v. MicroStrategy, Inc.*, No. 11-cv-11970, 2017 WL 505969 (D. Mass. Feb. 7, 2017) ....10

*Doe v. GTE Corp.*, 347 F.3d 655 (7th Cir. 2003) ....15

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003)....22

*Estate of Saunders v. Comm'r*, 745 F.3d 953 (9th Cir. 2014) ....18

*Gordon v. Kolod Wager Law Offices, LLP*, No. D044577, 2007 WL 840869 (Cal. Ct. App. Mar. 21, 2007)....21

*Hutton v. McDaniel*, 264 F. Supp. 3d 996 (D. Ariz. 2017)....21

*In re Deep Vein Thrombosis*, 356 F. Supp. 2d 1055 (N.D. Cal. 2005)....18

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019)....11

*In re Firearm Cases*, 126 Cal. App. 4th 959 (2005)....18

*J.M. v. Illuminate Educ., Inc.*, 19 Cal. 5th 705 (2026)....................10

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018)....................6, 7, 14, 19

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)....................11, 12

*Maag v. U.S. Bank, Nat'l Ass'n*, No. 21-cv-31, 2021 WL 5605278 (S.D. Cal. Apr. 8, 2021)....................12

*Mata v. Digital Recognition Network, Inc.*, 121 Cal. App. 5th 1075 (2026).................... passim

*McGinity v. Reimagined Parking LLC*, No. 26-cv-2760, 2026 WL 2322918 (N.D. Cal. Aug. 5, 2026)....................13

*Messano v. Experian Information Solutions, Inc.*, 251 F. Supp. 3d 1309 (N.D. Cal. 2017)....................21

*Modisette v. Apple Inc.*, 30 Cal. App. 5th 136 (2018)....................18

*Nat'l Pork Producers Council v. Ross*, 598 U.S. 356 (2023)....................18

*Navarro v. Ski Data, Inc.*, No. 20-cv-7370, 2022 WL 18280359 (C.D. Cal. Dec. 7, 2022)....................16, 17

*O'Neil v. Crane Co.*, 53 Cal. 4th 335 (2012)....................18

*People v. Arias*, 45 Cal. 4th 169 (2008)....................16

*People v. Pieters*, 52 Cal. 3d 894 (1991)....................18

*Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 737 F.3d 546 (9th Cir. 2013)....................15

*Soo Park v. Thompson*, 851 F.3d 910 (9th Cir. 2017)....................6, 11, 12

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011)....................6

*Van Buren v. United States*, 593 U.S. 374 (2021)....................10, 16

*Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958 (9th Cir. 2001)....................8

*Waln v. Dysart Sch. Dist.*, 54 F.4th 1152 (9th Cir. 2022)....................12

*Wilcox v. Swapp*, 330 F.R.D. 584 (E.D. Wash. 2019)....................20

**Statutes, Rules and Regulations**

Cal. Civ. Code § 1798.29....................14

Cal. Civ. Code § 1798.90.5....................2, 3, 9, 16

Cal. Civ. Code § 1798.90.51.................... passim

Cal. Civ. Code § 1798.90.52....................3

Cal. Civ. Code § 1798.90.53....................2, 3, 15

Cal. Civ. Code § 1798.90.54 .......... passim

Cal. Civ. Code § 1798.90.55 .......... passim

Fed. R. Civ. P. 9(b) .......... 6, 21

Fed. R. Civ. P. 15(a)(2) .......... 22

Cal. Rules of Court, rule 8.1115(a) .......... 21

45 C.F.R. § 160.103 .......... 9

## I. INTRODUCTION

California's automated license plate recognition ("ALPR") statute requires every operator of an ALPR system to protect the data it holds against "unauthorized access, destruction, use, modification, or disclosure." Cal. Civ. Code § 1798.90.51(a). Anyone "harmed by a violation" may sue "a person who knowingly caused the harm." *Id.* § 1798.90.54(a). The statute also limits where public-agency data may go: "[a] public agency shall not sell, share, or transfer ALPR information, except to another public agency, and only as otherwise permitted by law." *Id.* § 1798.90.55(b). The reason is simple. As the California Supreme Court has recognized, ALPR data "showing where a person was at a certain time could potentially reveal where that person lives, works, or frequently visits." *ACLU Found. of S. Cal. v. Superior Ct.*, 3 Cal. 5th 1032, 1044 (2017).

Plaintiffs Michelle Rojas and Marissa Barriga live in Merced, California. Rojas drives past ALPR cameras operated by Defendant Motorola Solutions, Inc., and located near the entrance to the University of California, Merced, nearly every day; Barriga drove past them numerous times as well. Each pass captured their license plate number, geolocation, and the date and time the information was captured, among other data. The Complaint alleges that the UC Merced Police Department, an end-user of Motorola's ALPR system, shared its ALPR data with federal and out-of-state agencies, including Customs and Border Protection's National Targeting Center, IRS Criminal Investigation, the U.S. Marshals Service, and the U.S. Secret Service, and that an Agency Data Sharing Report prepared by Motorola confirmed it. Based on those circumstances, Plaintiffs allege on information and belief that federal and out-of-state agencies accessed, used, or received their ALPR information. Motorola, by its own account, is the "custodian" of law-enforcement ALPR data in its system and "facilitate[s]" the sharing of that data between agencies. *See* ECF No. 58-2, Schar Decl. Ex. A §§ D–E.

Motorola's motion turns on three mistaken premises:

*First*, it argues that to properly plead harm, Plaintiffs must allege a recorded retrieval of their own ALPR information. But the ALPR statute treats unauthorized disclosure as harm, and Plaintiffs plausibly allege that a set of records including their scans was unlawfully shared

with multiple federal and out-of-state agencies. Further, deprivation of the right to know how ALPR information is being used, shared and transferred also constitutes harm under the ALPR statute. Plaintiffs also plead this harm.

*Second*, Motorola contends that the ALPR statute does not make vendors secondarily liable for customers' data sharing. But Plaintiffs do not rely on secondary liability. They allege that Motorola breached its own duty as an operator to maintain safeguards against unauthorized disclosure; section 55 of the ALPR statute explains why the disclosure was unauthorized. Nor is the case limited to the sharing by the UC Merced and Merced police departments. Plaintiffs allege broader failures in Motorola's safeguards and policy across its California ALPR system.

*Third*, Motorola argues that it must have known of an actual instance of unauthorized conduct involving each Plaintiff's data to be liable. But an ALPR operator that knowingly makes a defined set of records available to a recipient knowingly discloses the records in that set, whether or not it identifies each driver. This is exactly what Motorola is alleged to have done. The motion should be denied.

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Whether Plaintiffs plausibly allege they were "harmed by a violation" of Cal. Civ. Code § 1798.90.54(a).
2. Whether Plaintiffs plausibly allege that Motorola violated Cal. Civ. Code §§ 1798.90.51 and 1798.90.53.
3. Whether Plaintiffs plausibly allege that Motorola "knowingly caused the harm" Plaintiffs allege.

## III. STATEMENT OF FACTS

### A. The ALPR Statute

California enacted its automated license plate recognition ("ALPR") statute in 2015 to regulate the operation and use of ALPR systems. Cal. Civ. Code § 1798.90.5 *et seq.* (the "ALPR Statute"). An "ALPR system" is "a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-

readable data." *Id.* § 1798.90.5(d). "ALPR information" is the "information or data collected through the use of an ALPR system." *Id.* § 1798.90.5(b). The statute regulates two kinds of participants. An "ALPR operator" is "a person that operates an ALPR system," and an "ALPR end-user" is "a person that accesses or uses an ALPR system." *Id.* § 1798.90.5(a), (c). A "person" includes a corporation. *Id.* § 1798.90.5(e).

The ALPR Statute imposes three sets of duties on ALPR operators. First, an ALPR operator must "[m]aintain reasonable security procedures and practices, including operational, administrative, technical, and physical safeguards, to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure." *Id.* § 1798.90.51(a). Second, an ALPR operator must implement a usage and privacy policy that is "available to the public in writing" and "posted conspicuously" on its website. *Id.* § 1798.90.51(b)(1). The policy must cover seven subjects, including who may use the system, how the system is monitored, and "[t]he purposes of, process for, and restrictions on, the sale, sharing, or transfer of ALPR information to other persons." *Id.* § 1798.90.51(b)(2). Third, an ALPR operator that "provides access" to ALPR information must keep a record of that access and must "[r]equire that ALPR information only be used for the authorized purposes described in the usage and privacy policy." *Id.* § 1798.90.52(a)–(b). ALPR end-users must maintain the same safeguards and adopt a comparable policy. *Id.* § 1798.90.53.

The ALPR Statute has separate restrictions for public agencies, which it defines as the state and its cities, counties, and other subdivisions, including law enforcement agencies. *Id.* § 1798.90.5(f). As relevant here, a public agency "shall not sell, share, or transfer ALPR information, except to another public agency, and only as otherwise permitted by law." *Id.* § 1798.90.55(b). Federal agencies and agencies of other states fall outside that definition, so a California police department may not share its ALPR information with them.

Section 54 of the ALPR Statute provides for a private cause of action for violations of the statute. The statute authorizes suit by "an individual who has been harmed by a violation of this title, including, but not limited to, unauthorized access or use of ALPR information or a breach of security of an ALPR system," against "a person who knowingly caused the harm."

*Id.* § 1798.90.54(a). A court may award actual damages, "but not less than liquidated damages in the amount of two thousand five hundred dollars ($2,500)," and punitive damages "upon proof of willful or reckless disregard of the law." *Id.* § 1798.90.54(b)(1)–(2).

**B. Motorola's ALPR System and Policy**

Motorola is a private vendor of an ALPR system. Compl. ¶ 7. In connection therewith, Motorola sells ALPR cameras and software to law enforcement and commercial customers and also uses the ALPR system for its own commercial purposes. *Id.* ¶¶ 7-9, 29. Motorola is both an ALPR operator and end-user. *Id.* ¶¶ 45, 95. Motorola's usage and privacy policy (the "Policy"), which Motorola asks the Court to consider, states that "the company allows law enforcement agencies (LEAs) to query the system directly," that "[a]ll customers and law enforcement agency users are required to establish an account pursuant to an agreement with the company," and that, "[w]ith respect to data collected by a LEA [law enforcement agency], we facilitate sharing that data only with other LEAs and, in that case, only to the extent the agency has reviewed and agreed to the share." *See* ECF No. 58-2 (Policy § D). For law-enforcement-owned systems, "the respective law enforcement agency . . . is the owner of the LPR data and the company is the custodian." *Id.* § (E). The Policy also states that Motorola maintains "system and data usage logs" that include, among other things, "[t]he license plate number or other data elements used to query the system" and "the organization or entity with whom the person is affiliated." *Id.* § (C).

**C. The Reported Sharing and Other Security Failures**

In April 2026, a news report stated that the UC Merced Police Department, an ALPR end-user of Motorola's ALPR system, was sharing ALPR information with federal and non-California agencies, including Customs and Border Protection's National Targeting Center, IRS Criminal Investigation, the U.S. Marshals Service, and the U.S. Secret Service. Compl. ¶¶ 12, 50. An "Agency Data Sharing Report" prepared by Motorola confirmed the report, listing the agencies with which the UC Merced Police Department was sharing ALPR information. *Id.* ¶ 51. Separately, the Merced Police Department, also an end-user of Motorola's ALPR system, was reported to be sharing ALPR information with the U.S. Marshals Service and the

Bureau of Indian Affairs. *Id.* ¶ 53. Plaintiffs allege that each police department was able to share ALPR information with those prohibited agencies because Motorola failed to maintain reasonable security procedures and practices. *Id.* ¶¶ 49, 52, 54.

The sharing by the two Merced police departments is not the only safeguard failure the Complaint alleges. In June 2024, the federal Cybersecurity and Infrastructure Security Agency issued an advisory citing vulnerabilities in Motorola's ALPR technology that "could allow an attacker to tamper with the device, access sensitive information and credentials, or perform a replay attack." Compl. ¶ 31; *see id.* ¶ 47. In January 2025, an independent security researcher revealed that real-time footage and data from Motorola's ALPR cameras could be viewed on the open internet without authentication. *Id.* ¶¶ 32, 48. Motorola's ALPR cameras are installed throughout California, *id.* ¶ 8, and Plaintiffs allege on information and belief that Motorola continues to fail to maintain reasonable safeguards, *id.* ¶ 55.

### D. The Policy's Posting and Content

Plaintiffs allege that, in contravention of the ALPR Statute, Motorola's Policy: (a) was not linked from its website's homepage or the license plate recognition product page reached through the website's navigation; (b) did not appear in website searches for "ALPR" or "automatic license plate recognition"; and (c) was located at a deep URL. *Id.* ¶¶ 62–66. Plaintiffs further allege that, in contravention of the ALPR Statute, the Policy fails to include a description of the job title or other designation of the employees and independent contractors who are authorized to access and use captured ALPR information. *Id.* ¶¶ 57-58. Instead, the Policy merely designates "[a]ll employees" and "[a]ll independent contractors" as authorized users. *Id.* Plaintiffs also allege that, in violation of the ALPR Statute, the Policy does not contain a description of the reasonable measures that will be used to ensure the accuracy of the captured ALPR information and correct data errors. *Id.* ¶¶ 59-61. Rather, while the Policy acknowledges that captured ALPR information is "sometimes inaccurate," it only "recommends" that ALPR end-users confirm the data without setting forth any affirmative steps *Motorola* will take to ensure data accuracy. *Id.* ¶¶ 57–61.

### E. Plaintiffs

Each time Plaintiffs passed near Motorola's ALPR cameras in California, including the cameras located near the UC Merced entrance, the cameras captured their license plate numbers and geolocation data, along with the date and time of the capture. *Id.* ¶¶ 8–9, 14–15, 70–72. Based on the circumstances alleged in the Complaint and described above, Plaintiffs allege on information and belief that federal and out-of-state agencies accessed, used, or received their ALPR information. *Id.* ¶ 76. They allege a loss of privacy and fear that those agencies are using their ALPR information. *Id.* ¶¶ 79–80.

## IV. ARGUMENT

### A. Legal Standards

A complaint survives if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When a defendant offers a plausible alternative explanation, the complaint survives unless that alternative "is so convincing that plaintiff's explanation is *im*plausible." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Allegations on information and belief are permitted "where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (citation omitted). Knowledge "may be alleged generally," Fed. R. Civ. P. 9(b), though that allegation must still be plausible under Rule 8, *Iqbal*, 556 U.S. at 686–87. A document incorporated by reference may be considered, but "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018).

### B. Plaintiffs' Complaint Does Not Incorporate Exhibits B-G to Motorola's Motion to Dismiss by Reference.

As a threshold matter, the Court should not consider Exhibits B through G to Motorola's motion because Plaintiffs did not incorporate those exhibits by reference. *See* Mot. 13 n.5 (seeking incorporation by reference, not judicial notice). Those exhibits consist of

screenshots of pages of Motorola's website showing various products and search results. ECF Nos. 58-3 to 58-8. The images were captured on November 12, 2026, nearly six months after Plaintiffs' Complaint. Schar Decl. ¶¶ 3–8. The Complaint does not refer to the product pages or searches for the terms shown in the exhibits. Incorporation by reference does not reach a document that "merely creates a defense to the well-pled allegations," *Khoja*, 899 F.3d at 1002, and even a properly incorporated document may not be accepted as true to dispute the complaint's factual allegations, *id.* at 1003. Motorola offers Exhibits B through G for that purpose, asking the Court to credit its website over Plaintiffs' allegations. Mot. 13 n.5. The Court should not consider them. Plaintiffs do not object to the Court's consideration of Exhibit A, Motorola's Policy, which the Complaint quotes. Plaintiffs note that Exhibit A bears a version date of October 2025 and was downloaded on November 12, 2026, so it does not show the contents of the Policy before then. Schar Decl. ¶ 2.

**C. Plaintiffs Plausibly Allege They Were "Harmed by a Violation."**

Motorola's lead argument is that Plaintiffs were not harmed because they do not allege that a prohibited agency actually viewed their ALPR information. Mot. 4–7. Section 54 of the ALPR Statute permits suit by an individual "harmed by a violation." The question is whether unauthorized disclosure of a person's ALPR information is harm, and whether Plaintiffs plausibly allege that their ALPR information was disclosed. The answer to both is yes. Part 1 below explains why disclosure is harm. Part 2 explains why the Complaint plausibly alleges Plaintiffs' ALPR information was disclosed. Part 3 shows that the Complaint's allegations are sufficient even if the Court interprets the ALPR Statute to require an allegation that a prohibited agency retrieved a particular record. Part 4 addresses Plaintiffs' separate theory of harm based on Motorola's deficient Policy.

**1. Unauthorized Disclosure of a Person's ALPR Information Is Harm.**

The ALPR Statute provides that "an individual who has been harmed by a violation of this title, *including, but not limited to, unauthorized access or use of ALPR information* or a breach of security of an ALPR system, may bring a civil action in any court of competent

jurisdiction against a person who knowingly caused the harm." Cal. Civ. Code § 1798.90.54(a) (emphasis added). The "ALPR Law does not require a plaintiff to suffer measurable monetary damages in order to establish harm." *Bartholomew v. Parking Concepts, Inc.*, 118 Cal. App. 5th 438, 447 (2026)[1]; *see also* Cal. Civ. Code § 1798.90.54(b) (court may award "[a]ctual damages, but not less than liquidated damages in the amount of two thousand five hundred dollars ($2,500) . . . ."). However, harm requires "more than just the fact of a violation" of the ALPR Statute. *Bartholomew*, 118 Cal. App. 5th at 447.

Civil Code section 1798.90.54(a) "gives several non-exclusive examples of how a plaintiff might be harmed by a statutory violation" of the ALPR Statute, including harm caused by unauthorized access or use of ALPR information. *Mata v. Digital Recognition Network, Inc.*, 121 Cal. App. 5th 1075, 1092 (2026); *see also* Cal. Civ. Code § 1798.90.54(a). In *Mata*, the court held that each of the three examples set forth in § 1798.90.54(a) is an example "of actual, not abstract, harm." 121 Cal. App. 5th at 1094. The court further held that the ALPR Statute permits suit when an "individual's ALPR information has been improperly obtained, used or released," *id.* at 1096, which is what Plaintiffs allege here.

The court's holding in *Mata* is supported by the ALPR Statute's legislative history. *Id.* at 1094–97. For example, "an enrolled bill report from the California Highway Patrol states, '[Senate Bill No.] 34 would permit anyone *whose information is disclosed* in violation of the sections proposed by this bill to seek civil action against the individual who knowingly caused the violation.'" *Id.* at 1095–96 (alteration in original) (quoting Cal. Highway Patrol, Enrolled Bill Rep. on Sen. Bill No. 34 (2015-2016 Reg. Sess.) Sept. 1, 2015, p. 1). "That same report describes the following argument in favor of the bill: 'This bill outlines rules and regulations regarding the use of personal information and the consequences *for allowing that personal information to be obtained or released without cause.*'" *Id.* at 1096 (quoting Cal. Highway Patrol, Enrolled Bill Rep. on Sen. Bill No. 34 (2015-2016 Reg. Sess.) Sept. 1, 2015, p. 10).

---

[1] Federal courts follow the decisions of the California Courts of Appeal unless there is convincing evidence that the California Supreme Court would decide differently. *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001).

In *Mata*, the court found that this legislative history "supports the conclusion that the ALPR statute was intended to give an individual the right to sue when that individual's ALPR information has been improperly obtained, used or released." *Id.*

Here, Plaintiffs allege that: (a) Motorola's ALPR system allows for the sharing of their captured ALPR information with prohibited agencies; and (b) Motorola allowed *unauthorized access* of the ALPR information from its California ALPR Cameras to, *inter alia*, the Customs and Border Patrol – National Targeting Center, the IRS Criminal Investigation, the United States Marshals Service, and the United States Secret Service. Compl. ¶¶ 12, 49-54. Indeed, Plaintiffs expressly allege that an "Agency Data Sharing Report" prepared by Motorola set forth the agencies with which the UC Merced Police Department shared ALPR information. *Id.* ¶ 51. Sharing ALPR information with an unauthorized entity is one and the same as allowing unauthorized access to the information.

### 2. Plaintiffs Plausibly Allege That Their Records Were Among Those Disclosed.

Motorola's real dispute is over whether Plaintiffs' own records were disclosed. Three distinct events are at issue: (a) an unauthorized agency's permission to search another agency's ALPR information; (b) the resulting access to, and sharing and disclosure of, the information that permission covers; and (c) a later retrieval of particular ALPR information. Motorola treats the first and third as the only possibilities and argues that permission alone is not harm. Mot. 4–7. But the second event—which is actionable under the ALPR Statute—is the one Plaintiffs allege. An "ALPR system" is "a searchable computerized database." Cal. Civ. Code § 1798.90.5(d).

Making a defined set of records available to a recipient for searching discloses those records and makes them accessible to that recipient at the time they are made available; retrieval of any one of them is a separate, later event. "Disclosure" in its ordinary sense includes providing access. *See, e.g.*, 45 C.F.R. § 160.103 ("Disclosure means the release, transfer, provision of access to, or divulging in any manner of information outside the entity holding the information."). The California Supreme Court recently applied the same understanding to

the State's medical-privacy statute, holding that information exposed to an unauthorized party loses its confidentiality whether or not anyone views it; the court "reject[ed] the rule that no breach of confidentiality has occurred until medical information is actually viewed by an unauthorized person." *J.M. v. Illuminate Educ., Inc.*, 19 Cal. 5th 705, 721 (2026). Motorola's own-cited authority is to the same effect. *Van Buren v. United States*, 593 U.S. 374 (2021), a Supreme Court decision on which Motorola relies, describes "access" as entering a computer system or a part of one, "such as files, folders, or databases." *Id.* at 388. The other cases Motorola cites for a distinction between a database and its data (Mot. 5) are a trade-secret decision and a patent claim-construction order that say nothing about disclosure of personal information. *Chatham Fin. Corp. v. Milhaus, LLC*, 807 F. Supp. 3d 373 (D. Del. 2025); *DataTern, Inc. v. MicroStrategy, Inc.*, No. 11-cv-11970, 2017 WL 505969 (D. Mass. Feb. 7, 2017).

Motorola does not dispute that the Complaint alleges the above-described access and disclosure. Its motion acknowledges that the UC Merced and Merced Police Departments "made ALPR data available to federal and out-of-state law enforcement agencies" (Mot. 2), "meaning that they made those databases available for searching" (Mot. 7), and that Motorola's "Agency Data Sharing Report" lists "the agencies with which the UC Merced Police Department shared data." Mot. 15. While Motorola tries to downplay this unlawful conduct as mere "database-level access" (Mot. 7), that access is expressly prohibited by the ALPR Statute. A database made available to a recipient has been disclosed to that recipient, granting that recipient access to every record in it.

The Complaint pleads each link needed to infer that Plaintiffs' ALPR information was within data disclosed to, shared with and made accessible to the prohibited agencies. Each Plaintiff passed through or near the UC Merced entrance where Motorola's ALPR cameras were located, Rojas nearly every day and Barriga on specified dates. Compl. ¶¶ 70–72. Each time Plaintiffs drove past the ALPR cameras, the cameras captured Plaintiffs' ALPR information. *Id.* ¶ 72. The UC Merced Police Department, an end-user of Motorola's ALPR system, shared its captured ALPR information with numerous federal and out-of-state agencies

set forth in Motorola's Agency Data Sharing Report. *Id.* ¶¶ 50–51. The Complaint alleges that Motorola's ALPR system "allows for the sharing of [Plaintiffs'] captured information with the federal government and state agencies outside of California." *Id.* ¶ 12. That sharing occurred "at relevant times" when Plaintiffs traveled past the cameras. *Id.* ¶ 76.

Based on the above-alleged facts, it is reasonable to infer that the ALPR information made available to the prohibited agencies included Plaintiffs' ALPR information, and Plaintiffs so allege on information and belief. *Id.* That inference rests on specific pleaded facts and satisfies *Park*, 851 F.3d at 928. In *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019), the court drew the same inference when the facts showed that a defendant made a body of user data available to third parties: when data is shared that widely, "it is virtually inevitable that some of these companies obtained information on the named plaintiffs," and demanding more "puts too great a burden on the plaintiffs, at least at the pleading stage." *Id.* at 787.

*Mata* does not hold otherwise. Motorola describes *Mata* as rejecting "database-level access," relying on the appellant's brief rather than the court's opinion. Mot. 5 & n.2. The undisputed summary judgment record in *Mata* was that the plaintiff's information had "not been accessed by anyone except his own attorneys." 121 Cal. App. 5th at 1090. The court rejected the plaintiff's credential-sharing theory because he "did not produce any evidence of an actual occurrence of this with his own ALPR information." *Id.* at 1089 n.11. Through sleight of hand, Motorola recasts the "credential-sharing theory" of which there was no evidence in *Mata* with the bracketed phrase "[unauthorized access]." Mot. 4. But the language at issue in *Mata* addressed an evidentiary finding; it did not create a standing rule. *See Mata*, 121 Cal. App. 5th at 1089 n.11.

While Motorola contends that the elements of a claim do not change with the stage of the case (Mot. 5 n.2), the case on which it relies makes clear that "[w]hat a plaintiff must do to satisfy those elements may increase as a case progresses." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 332 (2020); *see Lujan v. Defenders of Wildlife*, 504

U.S. 555, 561 (1992). At this stage, Plaintiffs need only make a plausible showing that Motorola disclosed their ALPR information and made it accessible to prohibited agencies.

**3. In the Alternative, the Pleaded Facts Support an Inference of Retrieval.**

If the Court determines that the aspect of harm heretofore discussed requires Plaintiffs' specific ALPR information to have been accessed by a prohibited agency, Plaintiffs' allegations and the reasonable inferences therefrom are sufficient. Motorola's ALPR system captured Rojas' ALPR information at the UC Merced entrance nearly every day. Compl. ¶¶ 70, 72; *see also id.* ¶¶ 71-72 (Barriga). Motorola boasts that users of its ALPR system can "search for, find and review the location history of a vehicle." *Id.* ¶ 11. Among those who could search Motorola's ALPR system for Plaintiffs' ALPR information were prohibited federal agencies. *Id.* ¶¶ 12, 50. Whether any of them ran a query returning Plaintiffs' ALPR information is information Plaintiffs cannot obtain without discovery. Motorola argues the relevant facts are held only by its customers. Mot. 7. But Motorola's own Policy states that it maintains usage logs that include the data used to query the ALPR system and the querying user's organization. Policy § (C). Those records are in Motorola's hands, not Plaintiffs'. Under these circumstances, pleading on information and belief is appropriate. *Park*, 851 F.3d at 928; *see Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1161 (9th Cir. 2022) (allowing information-and-belief allegations where "a plaintiff could not have personal knowledge of what occurred at each one, but the school district would").

Motorola's authority does not run to the contrary. Mot. 6–7 (citing *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051 (C.D. Cal. 2023); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056 (C.D. Cal. 2024); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023); *Boulton v. Community.com, Inc.*, No. 23-3145, 2025 WL 314813 (9th Cir. Jan. 28, 2025) (unpublished)). Unlike here, in those cases, the plaintiffs did not identify what information was disclosed, to whom, or how. Motorola's analogy to the California Consumer Privacy Act fares no better. *Maag v. U.S. Bank, Nat'l Ass'n*, No. 21-cv-31, 2021 WL 5605278, at *2 (S.D. Cal. Apr. 8, 2021), cited at Mot. 6, was dismissed because the plaintiff alleged no facts showing the

bank's security was deficient. Here, the Complaint: (a) identifies the cameras, the end-users, the specific federal recipients, and the Motorola-prepared report; and (b) alleges that Motorola's cameras captured each Plaintiff's ALPR information. Compl. ¶¶ 12, 50–54, 70–72.

#### 4. The Inconspicuous, Incomplete Policy Provides an Additional Basis for Harm.

Plaintiffs also allege a separate harm based on Motorola's insufficient Policy depriving Plaintiffs of their right to know how their ALPR information was used, shared and transferred. In *Bartholomew*, the court held that: (a) collecting a person's ALPR information without implementing and making public the required usage and privacy policy harms that person by violating "the right to know which entities are collecting their ALPR data and how it is being used and maintained"; and (b) the policy is "critical in holding ALPR operators accountable" because it defines the authorized uses that bind recipients under section 52(b). 118 Cal. App. 5th at 449-50; *see also McGinity v. Reimagined Parking LLC*, No. 26-cv-2760, 2026 WL 2322918, at *1 (N.D. Cal. Aug. 5, 2026) (holding that the plaintiff had "adequately alleged actionable harm to his 'right to know' about the use of ALPRs," and predicting that "the California Supreme Court will, when faced with the question, conclude that violation of a consumer's right to know is an actionable harm under the statute"). As described above, Motorola's Policy was severely deficient. It did not contain required information and was not properly posted or accessible.

Motorola contends *Bartholomew* is limited to an ALPR operator with no policy at all based on a footnote in which the court expressed no opinion "as to whether collecting and maintaining ALPR information with a usage and privacy policy that does not include every component identified in section 1798.90.51, subdivision (b)(2) would also cause such harm." *Bartholomew*, 118 Cal. App. 5th at 449 n.10. The footnote said nothing about a policy that does not comply with the ALPR Statute's accessibility and posting requirements. *See id. Mata* does not help Motorola either: the policy there contained every required item and was linked from the homepage, and the court did not decide the right-to-know theory. 121 Cal. App. 5th

at 1086, 1099. The facts in this case more closely align with *Bartholomew*, and that case controls.

A policy posted where drivers cannot reasonably find it serves the statute's transparency function no better than a policy never posted. Motorola faults Plaintiffs for not alleging that they searched for the policy. Mot. 8. But neither the statute nor *Bartholomew* conditions the protections conferred by the statute on such a search. Indeed, the court in *Bartholomew* found harm without requiring any allegation that the plaintiff had looked for a policy. *See Bartholomew*, 118 Cal. App. 5th at 449.

While the court's opinion in *Mata* contains dicta related to the plaintiff's failure to look for the defendant's usage and privacy policy, the actual holding was based on the absence of any actual harm. *See Mata*, 121 Cal. App. 5th at 1098. Moreover, unlike here, *Mata* involved a summary judgment opinion, as opposed to a decision at the pleadings stage where all allegations and reasonable inferences therefrom must be viewed in the light most favorable to the plaintiffs. Motorola's improper screenshots highlight this issue. Motorola captured the screenshots on November 12, 2026, months after the Complaint, and used search terms different from those alleged. *Compare* Schar Decl. ¶¶ 6–8, *with* Compl. ¶ 65. Even if proper, the screenshots merely create a factual dispute that is not ripe for resolution at this early stage. They cannot establish how the site appeared when Plaintiffs' data was collected and may not be used to "dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003.

Motorola's reliance on California's breach-notification statute, which requires actual individual notice, does not change the analysis. Mot. 8 (citing Cal. Civ. Code § 1798.29). That the Legislature chose individual notice for one statute and the proper posting of a compliant usage and privacy policy for the ALPR Statute merely reveals different tools available to the Legislature. In the context of the ALPR Statute, when an ALPR operator does not post the policy conspicuously, that tool fails for everyone whose data the operator collects, whether or not any particular driver went looking. Requiring a plaintiff to allege an unsuccessful search would reward the operator whose policy is hardest to find, and would make the conspicuous-posting requirement enforceable only by the few people who already know where to look.

**D. Plaintiffs Plausibly Allege That Motorola Violated the Statute.**

Motorola's second argument is that, even if Plaintiffs were harmed, the harm was caused by the police departments that shared the data, not by Motorola, and the statute does not make a vendor liable for its customers' conduct. Mot. 9–12. That argument misreads the Complaint. Plaintiffs' claim is that Motorola violated duties the statute imposes on Motorola itself. Moreover, the Complaint is not limited to the sharing by two public agencies. It covers Motorola's ALPR system throughout California. The Complaint alleges safeguard failures beyond that sharing, Compl. ¶¶ 31–32, 46–48, 55, and challenges a Policy that governs Motorola's ALPR system statewide, *id.* ¶¶ 8, 56–66, 82.

**1. Plaintiffs' Complaint Rests on Motorola's Own Operator Duties.**

Plaintiffs do not allege that Motorola violated section 55 of the ALPR Statute (relating to public agencies) or is vicariously liable for a public agency's violation of that section. They allege that Motorola, as an operator and end-user, breached duties the statute places on Motorola directly: to maintain reasonable safeguards against "unauthorized . . . disclosure," Cal. Civ. Code §§ 1798.90.51(a), 1798.90.53(a), and to implement and conspicuously post a compliant policy. *Id.* §§ 1798.90.51(b), 1798.90.53(b); Compl. ¶¶ 45–66, 95–98. A single disclosure can implicate both a public agency's duty under section 55 and an operator's independent duty under sections 51(a) and 53(a). And the section 51(a) duty applies whether or not a public agency is involved, as when Motorola's own cameras exposed real-time data on the open internet without authentication. Compl. ¶¶ 32, 48.

*Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 737 F.3d 546, 550–51 (9th Cir. 2013), *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177–78 (1994), and *Doe v. GTE Corp.*, 347 F.3d 655, 658–59 (7th Cir. 2003), relied on by Motorola (Mot. 9–10), concern attempts to extend liability to parties who did not themselves breach the operative statutory duty. The ALPR Statute regulates operators and end-users by name, and Plaintiffs allege that Motorola is both. *See* Compl. ¶¶ 45, 95; Mot. 9–12.

**2. A Disclosure Forbidden by California Law Is "Unauthorized."**

"Unauthorized" carries its ordinary meaning: "without authority or permission."[2] As relevant here, under section 55(b) of the ALPR Statute, a California public agency may not share ALPR information with anyone other than "another public agency," and then "only as otherwise permitted by law." Federal and out-of-state agencies are not public agencies. Cal. Civ. Code § 1798.90.5(f). Ignoring the plain meaning of the term "unauthorized" and the plain language of section 55(b), Motorola baldly contends a disclosure could be unlawful yet not "unauthorized." Mot. 10. The contention is unsupported and meritless.

Relying on *Van Buren*, Motorola argues that a disclosure is "unauthorized" only if the recipient lacked valid credentials. Mot. 5 n.3, 10. But *Van Buren* construed the federal Computer Fraud and Abuse Act. In all events, *Van Buren* does not require the interpretation championed by Motorola. The definition Motorola quotes appears in a "*cf.*" citation to a computing dictionary. *Van Buren*, 593 U.S. at 390 n.9. There, the Court construed the defined phrase "exceeds authorized access" in a federal criminal statute and expressly declined to decide whether authorization limits may arise from "contracts or policies" rather than technical barriers. *Id.* at 390 n.8. And Motorola's analogy fails on its own terms. The officer in *Van Buren* was entitled to search the database; the question was whether a later improper purpose exceeded that entitlement. Here, the federal and out-of-state recipients never had any lawful entitlement to a California public agency's ALPR information. The grant of access was itself unauthorized when it was made. This is not an authorized user's later misuse. Moreover, in section 51(a), "unauthorized" modifies "access, destruction, use, modification, or disclosure." An unauthorized disclosure is one the actor had no right to make, not merely one made without valid credentials. Reading the term as Motorola proposes would leave "disclosure" with little work to do. *See People v. Arias*, 45 Cal. 4th 169, 180 (2008).

Finally, contrary to Motorola's contention (Mot. 10), in *Navarro v. Ski Data, Inc.*, No. 20-cv-7370, 2022 WL 18280359, at *7 (C.D. Cal. Dec. 7, 2022), the court did not hold that

[2] Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/unauthorized (last visited Nov. 25, 2026).

the operator duties set forth in the ALPR Statute "target hackers, not customers"; those are Motorola's words. *Navarro*, a summary-judgment ruling, simply held that the ALPR Statute does not bar an operator from sharing with third parties it authorizes. It did not involve a public agency's data or the prohibition in section 55.

**3. Motorola Had Ultimate Control Over the Sharing and Disclosure of ALPR Information.**

According to Motorola's Policy: (a) every customer and law-enforcement user must hold an account under an agreement with Motorola; (b) agencies are allowed to query the ALPR system directly; (c) Motorola "facilitate[s]" sharing of law-enforcement data between agencies; and (d) Motorola serves as custodian of that data. Policy §§ D–E. As alleged in the Complaint, Motorola also prepared the Agency Data Sharing Report identifying the agencies with which the UC Merced Police Department was sharing ALPR information. Compl. ¶ 51. From those facts, it is reasonable to infer that Motorola knew the identity of each agency that had access to the ALPR information at issue and had ultimate control over the sharing and disclosure of that information. Indeed, the Complaint alleges that two identified California public agencies were able to share ALPR information with prohibited agencies because Motorola did not maintain reasonable safeguards. *Id.* ¶¶ 52, 54. For example, Motorola did not place blocks on agencies with which ALPR information could not be shared. Whether particular controls were feasible and reasonable is a factual question that cannot be resolved against Plaintiffs on the pleadings.

While Motorola seeks to portray its role as passive—*i.e.*, customers choose to share ALPR information (Mot. 1, 11-12)—all sharing and disclosure was carried out through Motorola's ALPR system, pursuant to Motorola's account agreements, with Motorola acting as custodian of the information. Policy §§ (D)-(E). Operating and controlling the mechanism through which a prohibited disclosure occurs is conduct, not passivity. Section 55 of the ALPR Statute does not displace the operator's duty. If an operator holding a public agency's data owed no duty to safeguard it against unlawful sharing, disclosure and transfer, a public agency could accomplish through its vendor what it cannot do directly. A statute "should not be

construed so as to render its provisions ineffective." *People v. Pieters*, 52 Cal. 3d 894, 901 (1991). The Legislature excluded data hosting from § 55's definition of sharing; it did not exempt operators from § 51. Cal. Civ. Code § 1798.90.55(b).

**4. Motorola's Remaining Arguments Do Not Warrant Dismissal.**

Unadopted Versions of ALPR Statute: Contrary to Motorola's contention, Plaintiffs do not seek to impose the "restriction" the Legislature declined to impose in unadopted versions of the ALPR Statute. *See* Mot. 10-11. As discussed throughout, Plaintiffs seek to apply the ALPR Statute, as enacted, against Motorola.

Motorola's Common-Law Argument: Motorola's reliance on common-law cases addressing the tort duties of manufacturers and sellers for harms caused by other products or by others' conduct (Mot. 11–12) is inapposite. *O'Neil v. Crane Co.*, 53 Cal. 4th 335 (2012); *In re Deep Vein Thrombosis*, 356 F. Supp. 2d 1055 (N.D. Cal. 2005); *In re Firearm Cases*, 126 Cal. App. 4th 959 (2005); *Modisette v. Apple Inc.*, 30 Cal. App. 5th 136 (2018). Plaintiffs' Complaint rests on a duty the ALPR Statute imposes on ALPR operators and end-users, like Motorola.

Motorola's Absurdity and Constitutional Argument: Contrary to Motorola's argument (Mot. 12), it is not absurd to distinguish data a private company like Motorola collects for itself from public-agency data the private company holds as a custodian. Indeed, that distinction is written into the ALPR Statute. Motorola raises its dormant Commerce Clause concern only in a footnote, Mot. 12 n.4, and "[a]rguments raised only in footnotes, or only on reply, are generally deemed waived." *Estate of Saunders v. Comm'r*, 745 F.3d 953, 962 n.8 (9th Cir. 2014). Moreover, section 55 of the ALPR Statute governs what California agencies may do with California-collected data; it does not discriminate against interstate commerce. *See Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369–76 (2023). Motorola concedes the avoidance canon is "unneeded." Mot. 12 n.4. Nor is the proposed class limited to data held by public agencies. It includes every individual whose license plate was captured by Motorola's California ALPR cameras. Compl. ¶ 82.

#### 5. Plaintiffs Plausibly Allege That the Policy Violates Section 51(b).

Plaintiffs allege the Policy was not conspicuously posted. *Id.* ¶¶ 62–66. Motorola's improper screenshots do not refute the allegations. The screenshots were captured months after the Complaint was filed, use different search terms, do not show Motorola's homepage, place the Policy behind a "Resources" tab on individual product pages, and do not establish the site's historical state. Schar Decl. ¶¶ 3–8. A document that "merely creates a defense to the well-pled allegations" is not properly incorporated to defeat them. *Khoja*, 899 F.3d at 1002. In *Mata*, by contrast, the policy was linked from the homepage. 121 Cal. App. 5th at 1086.

Separate from its posting deficiencies, the Policy does not contain the requisite information. *First,* the policy fails to describe "the job title or other designation of the employees and independent contractors who are authorized to use or access the ALPR system." Cal. Civ. Code § 1798.90.51(b)(2)(B). A designation identifies which personnel may access the data. Designating every employee and every contractor identifies no one and provides no specific insight into who has access to ALPR information. The list of activities Motorola cites (Mot. 14) describes what employees may do, not who they are.

*Second,* the Policy fails to describe "the reasonable measures that will be used to ensure the accuracy of ALPR information and correct data errors." *Id.* § 1798.90.51(b)(2)(F). Motorola's policy "recommends users of the data confirm the computer translation." Policy § (F). Motorola describes this recommendation as "a measure that users should take." Mot. 14. Importantly, it does not describe a measure Motorola will use, and it says nothing about correcting errors. The "wide leeway" *Bartholomew* recognized for private entities' use of their data, 118 Cal. App. 5th at 449, is the reason the required disclosures matter, not a license to omit them.

### E. Plaintiffs Plausibly Allege That Motorola "Knowingly Caused the Harm."

#### 1. Knowledge of Disclosing a Defined Set of Records Encompasses the Records in That Set.

Section 54 permits suit against "a person who knowingly caused the harm." Cal. Civ. Code § 1798.90.54(a). Motorola argues that the statute's knowledge language requires

subjective awareness of an actual instance of unauthorized conduct involving each plaintiff's data. Mot. 14. However, no court has held so. Motorola's reliance on *Bartholomew* (Mot. 14) is inapposite. The portion of the *Bartholomew* opinion that Motorola cites merely highlights that the ALPR Statute requires harm (as discussed above). *See* 118 Cal. App. 5th at 447–48. The opinion does not address the required mental state of the defendant to state a claim. *See id. Mata* interpreted the clause as describing "the class of defendants who may be sued, not the class of plaintiffs who may sue." 121 Cal. App. 5th at 1095 n.16 (emphasis omitted). And the term "knowingly" ordinarily "merely requires proof of knowledge of the facts that constitute the offense." *Bryan v. United States*, 524 U.S. 184, 193 (1998). Motorola conveniently omits the word "merely" from its quotation of *Bryan*. Mot. 14.

In all events, where the harm is the disclosure of a defined set of records, as is the case here, knowledge of that disclosure is knowledge of the facts constituting it. An ALPR operator that knowingly makes a database available to a recipient knows that the records in the database are disclosed, whether or not it knows the specific drivers whose records are included. Courts construing other privacy statutes that carry statutory damages agree. A defendant that "knew [it was] sharing video preferences of all users" thereby knew it was sharing the information of the consumers within that group. *Archer v. NBCUniversal Media, LLC*, 794 F. Supp. 3d 716, 723 (C.D. Cal. 2025); *see Cole v. LinkedIn Corp.*, 807 F. Supp. 3d 959, 969 (N.D. Cal. 2025) (allegation that defendant "knowingly installed the Pixel and configured it in a manner resulting in the conveyance of her personally identifiable information to third parties sufficiently pleads that LinkedIn knowingly disclosed her personally identifiable information"); *Wilcox v. Swapp*, 330 F.R.D. 584, 595 (E.D. Wash. 2019) (under the Driver's Privacy Protection Act, "knowledge is not an individualized question"). Requiring individualized awareness of each driver would make the statute's $2,500-per-person remedy unavailable in precisely the systemic cases it was enacted to address.

The ALPR Statute's remedial structure confirms this reading. Section 54 reserves punitive damages for "willful or reckless disregard of the law." Cal. Civ. Code § 1798.90.54(b)(2). Liability itself requires only that the defendant "knowingly caused the

harm." *Id.* § 1798.90.54(a). On Motorola's reading, the threshold for any liability—subjective awareness of each unauthorized query involving each plaintiff's vehicle—would be harder to meet than the willfulness or recklessness required for punitive damages. The Legislature did not write a statute in which the standard for liability is more demanding than the standard for punishment.

Motorola's state authority, *Gordon v. Kolod Wager Law Offices, LLP*, No. D044577, 2007 WL 840869, at *11 n.18 (Cal. Ct. App. Mar. 21, 2007), is unpublished and nonprecedential. *See* Cal. Rules of Court, rule 8.1115(a). In any event, *Gordon* quotes a jury instruction in a conversion case defining "knowing" as knowledge of the facts. *See id.* The case says nothing about knowledge of each injured person.

**2. The Complaint Pleads Knowledge at the Time of Disclosure.**

Knowledge may be alleged generally, Fed. R. Civ. P. 9(b), provided the allegation is plausible in light of the facts pleaded, *Iqbal*, 556 U.S. at 686–87. The relevant time is when the records were shared, disclosed and otherwise made accessible. The Complaint and Motorola's Policy support a plausible inference that Motorola knew of the sharing and disclosure at the time such sharing and disclosure occurred. Specifically, (a) Motorola's Policy describes a process in which Motorola "facilitate[s]" each law-enforcement share "only to the extent the agency has reviewed and agreed to the share" (Policy § D); (b) Motorola serves as custodian of the shared data (*id.* § E); and (c) Motorola prepared the data sharing report listing the agencies with which UC Merced shared its ALPR information, Compl. ¶ 51. Contrary to Motorola's contention, Plaintiffs' allegations regarding knowledge are not limited to Paragraph 81, alone. Mot. 15.

The cases relied on by Motorola, *id.*, do not suggest otherwise. In *Messano v. Experian Information Solutions, Inc.*, 251 F. Supp. 3d 1309, 1316 (N.D. Cal. 2017), the court did not decide whether the defendant acted willfully; it observed only that the complaint's allegation of knowing conduct was a bare, conclusory statement that the plaintiff had not defended, and it granted leave to amend. *Hutton v. McDaniel*, 264 F. Supp. 3d 996, 1011, 1015 (D. Ariz. 2017), was a shareholder derivative action applying the particularized standard for demand

futility to a board-oversight claim. Neither involved a defendant that facilitated and recorded the disclosure at issue.

**F. Any Dismissal Should Be with Leave to Amend.**

Leave to amend is to be "freely give[n]," Fed. R. Civ. P. 15(a)(2), a policy "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted). This is Plaintiffs' first complaint. It was drafted for Illinois state court, removed, and transferred, and has not been tested under federal pleading standards. The ALPR Statute has produced only two published appellate decisions, and neither addressed a complaint like this one. If the Court concludes that any element requires more factual detail, the appropriate course is to permit amendment rather than to foreclose the claim. Facts raised in opposition "should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice." *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

**V. CONCLUSION**

Plaintiffs allege that their ALPR information was made available to prohibited federal and out-of-state agencies through an ALPR system that Motorola operates, holds as custodian, and uses to facilitate sharing. Those allegations plausibly establish that Plaintiffs were harmed, that Motorola breached its own duties as an operator and end-user, and that Motorola knew the facts that made the disclosure unlawful. The Court should deny Motorola's motion to dismiss or, in the alternative, grant Plaintiffs leave to amend.

Dated: November 25, 2026

Respectfully submitted,

/s/ Tina Wolfson

Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Theodore W. Maya (SBN 223242)
tmaya@ahdootwolfson.com
AHDOOT & WOLFSON, PC
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

Bradley K. King (SBN 274399)
bking@ahdootwolfson.com
AHDOOT & WOLFSON, PC
521 Fifth Avenue, 17th Floor
New York, NY 10175
Telephone: (917) 336-0171

Scott R. Drury (SBN 355002)
scott@drurylegal.com
DRURY LEGAL, LLC
6 Carriage Lane
Highwood, IL 60040
Telephone: (312) 358-8225

Joshua D. Arisohn (*pro hac vice* forthcoming)
josh@arisohnllc.com
ARISOHN LLC
94 Blakeslee Road
Litchfield, CT 06759
Telephone: (917) 656-0569

*Counsel for Plaintiffs and the Proposed Class*